UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS BUFORD,

                    Plaintiff,

        v.                                              Case No. 25-cv-896-pp

RANDALL HEPP, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Dennis Buford, who is incarcerated at Wisconsin Secure Program Facility and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging violations of his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 30, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $116.72. Dkt. No. 5. The court received that fee on July 16, 2025.

1

The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff alleges that he was confined at Waupun Correctional Institution during the events described in the complaint. Dkt. No. 1 at ¶4. He names as defendants twenty-four individuals employed at Waupun: Warden Randall Hepp, Deputy Warden Emily Popson, Security Director Yana Pusich, Lieutenant Matthew Burns, Captain Rymarkiewicz, Captain Greil, Sergeant Bailey, Lieutenant Gripentrog, Officer Feuerhammer, Officer Schumann, Officer Jane Doe, Sergeant Koontz, Officer Lehman, Sergeant Demmers, Officer Russell, Officer Fialkowski, Officer Kollman, Nurse Andrea, Nurse Jessica Hosfelt, Nurse Vick, Nurse Krainyk, Nurse Hiland, Health Services Manager Haseleau and Advanced Care Practitioner Susan Edwards. Id. at ¶¶5-28.

The plaintiff alleges that on February 3, 2023, he was housed in the northwest cell hall along with his cellmate "CM," who had a shank (a homemade knife) and a history of assaulting incarcerated individuals. Id. at ¶¶38-39. That day, two incarcerated persons ("tall suspect" and "short suspect") allegedly approached the plaintiff's cell and demanded that he give them all his canteen items or they would stab him with their shanks. Id. at

3

¶40. The plaintiff states that CM told defendant Officer Jane Doe, who was walking on the range, to open their cell door because the tall suspect lived there. Id. at ¶41. Jane Doe allegedly radioed to the control sergeant to open the door even though she saw that there already were two individuals (the plaintiff and CM) in a two-man cell. Id. The plaintiff alleges that after the cell door opened, CM left the cell and walked up the range with the short suspect while the tall suspect stared at Jane Doe, waiting for her to move. Id. at ¶42. When Jane Doe allegedly did not walk away, the tall suspect aborted the robbery and stabbing attempt, and CM returned to the cell and didn't talk to the plaintiff as usual. Id.

The plaintiff states that based on CM's strange behavior, he believed that CM and/or the two suspects would again try to stab and rob him. Id. at ¶43. That night, the plaintiff allegedly wrote a request slip to defendant Burns providing details of the incident and asking Burns to talk to him or move him to another cell hall as soon as possible. Id. at ¶¶43-44. Burns allegedly received the request slip the next morning, at which time he notified defendants Hepp, Popson and Pusich about the plaintiff's safety concerns. Id. at ¶¶45-46.

The plaintiff alleges that on February 4, 2023, during an offsite medical trip for heart difficulties, he told defendants Fialkowski and Kollman about the request slip he wrote to Burns and about his safety concerns. Id. at ¶53. The plaintiff says that when Fialkowski returned from the medical trip that day, he relayed to Burns what the plaintiff had said about CM and the tall and short suspects. Id. at ¶54. Burns allegedly responded to Fialkowski, "I'm too busy. I got too heavy of a workload to investigate[.]" Id. The plaintiff alleges that Fialkowski didn't write an incident report after hearing that Burns was too

4

busy, nor did he help Hepp, Popson and Pusich with the security concerns. Id. at ¶55. Kollman also allegedly didn't write an incident report, nor did he talk to Hepp, Popson, Pusich or Burns about the security concerns. Id. at ¶56.

The plaintiff alleges that on February 5, 2023 at about 5:15 p.m., CM attacked the plaintiff by suffocating him with a pillowcase over his head, biting him and stabbing him with shanks. Id. at ¶58. Before the attack, a cell hall worker allegedly passed CM a note from the tall and short suspects. Id. The plaintiff alleges that throughout the struggle, he was only attempting to prevent CM from stabbing him. Id. at ¶59. He says that defendant Lehman saw the altercation and yelled, "Stop or I'll spray," but a blanket blocked the spray. Id. Lehman allegedly radioed for help and defendants Bailey, Feuerhammer and Schumann arrived at the cell. Id. at ¶60. The plaintiff alleges that for five to seven minutes, he repeatedly yelled for Bailey, Lehman, Feuerhammer and Schumann to help him because CM was stabbing him, but they just watched instead of opening the cell door. Id. at ¶62. Bailey and Lehman allegedly opened the cell's trap so a blanket could be moved, and then Bailey pepper-sprayed the plaintiff in the eyes. Id. The plaintiff says that this temporarily neutralized him and gave CM a chance to bite and stab him. Id. at ¶63. The plaintiff states that Bailey then sprayed CM and radioed for defendant Koontz to open the cell door. Id. Koontz allegedly did not immediately open the door and when defendant Greil arrived, he told Koontz not to open the cell door. Id. at ¶64. The plaintiff says that this gave CM a chance to further bite and stab him. Id. When Bailey allegedly saw CM trying to drive the shank into the plaintiff's eye and skull, he yelled, "Open the f*cking door. He's trying to kill him!" Id. at ¶65. Bailey, Lehman, Feuerhammer and Schumann allegedly had keys but did not manually open the door. Id. For another three to five minutes,

5

the plaintiff allegedly continued to hold CM's hands while yelling for the defendants to help. Id. at ¶66. Bailey, Feuerhammer, Schumann, Lehman and Greil allegedly watched the plaintiff fight for his life and get stabbed for another two to five minutes. Id. at ¶68. The plaintiff says that Greil then deployed her Taser on the plaintiff, which briefly neutralized him and allowed CM to further stab him. Id.

The plaintiff alleges that when he woke up, he was in a holding cell with "tape for wound bandages" that was peeling off, while some of his wounds weren't covered, so blood and pus were leaking everywhere. Id. at ¶69. He says that he received thirteen stab wounds to his face, neck, arms and ribs, an injured or broken rib, and several bite marks. Id. The plaintiff says that he doesn't remember how he left his cell, how he got to RHU or how defendants Nurses Vick and Haseleu "so-called dressed his wounds first, gave him a shower to wash off pepper spray, & then attempted to re-dress the wounds." Id. at ¶70.

The plaintiff alleges that Greil and Fisher refused to authorize him to go to the emergency room despite knowing that he had suffered multiple bite marks, stab wounds from rusty shanks and rib injuries that may have caused internal bleeding and exacerbated his ongoing heart difficulties. Id. at ¶72. Vick and Haseleu allegedly "failed to go over Defendant Greil & Fisher's heads and have Defendants Hepp, Popson, or Pusich authorize the ER Trip." Id. at ¶74.

The plaintiff alleges that on February 6, 2023, defendant ACP Suzanne Edwards learned of the plaintiff's injuries, but she failed to see and treat him, and she waited until February 22 to obtain a tetanus shot for him. Id. at ¶75.

On February 7, 2023, the plaintiff allegedly went to the RHU exam room for medical assistance, told defendant Krainyk that he was having heart

6

palpitations and chest pains and said that he wanted her to check his stab wounds and send him to the hospital. Id. at ¶78. Krainyk allegedly refused to redress the plaintiff's wounds and didn't even look at them, although the plaintiff informed her that there was pus, blood leakage and discoloration. Id.

On February 9, 2023, the plaintiff allegedly informed defendant Hiland in the exam room that it felt like his rib was broken because it was protruding and hard to breathe. Id. at ¶79. The plaintiff states that he asked Hiland why he wasn't receiving daily wound care, and pointed to pus and blood leaking. Id. Hiland allegedly replied that daily care wasn't needed because the plaintiff's stab wounds weren't serious enough, and that she couldn't do anything for him. Id.

The plaintiff alleges that during wound care on February 21, defendant Hosfelt told him that he was getting better care than people on the streets and traumatized him again by asking, "Are you sure you didn't give your cellmate permission to stab you?" Id. at ¶84. The plaintiff allegedly wrote to Hosfelt's supervisors about the remarks, and he wrote grievances on March 3 and 6. Id.

The plaintiff alleges that on February 13, 2023, he wrote to Pusich and said he was having psychological problems and didn't feel safe at Waupun. Id. at ¶81. The plaintiff allegedly asked Pusich to transfer him out of Waupun, but Pusich, Hepp and Popson didn't approve the transfer until July 2023. Id. The plaintiff states that until his transfer, he had to protect himself by refusing to leave the RHU when these defendants—along with Burns, Russell, Demmers and Rymarkiewicz—kept trying to release him to cell halls where he had safety issues regarding other incarcerated individuals. Id. The plaintiff alleges that from the February 5 stabbing until his July 2023 transfer out of Waupun, he wrote numerous request slips to Hepp, Popson, Pusich, Burns, Greil and

7

Rymarkiewicz, explaining his mental issues and the need for a "red tag" or single cell once he was released from the RHU. Id. at ¶90. These defendants allegedly denied the plaintiff a red tag or single cell without looking at his diagnosed mental health status. Id. Hepp, Popson, Pusich and Burns allegedly failed to take reasonable measures to ensure the plaintiff's safety before trying to release him from the RHU on February 22, March 8, April 11, May 10 and May 12, 2023. Id. at ¶91. The plaintiff states that because of refusing to leave the RHU, he received conduct reports for disobeying orders—reports that affected his ability to obtain medium custody status. Id. at ¶93.

The plaintiff alleges that on February 20, 2023, he filed a grievance after learning that approximately $150 of canteen items, his tablet, keyboard and radio were missing from his property that Lehman and Koontz packed after the stabbing. Id. at ¶94.

The plaintiff alleges that on March 3, 2023, his body was burning up and he had heart palpitations, leg spasms and lumps in his leg and arm, but that defendant Andrea refused to see him. Id. at ¶97. On March 22, 2023, Krainyk allegedly saw the plaintiff about severe pain, numbness and tingling in the plaintiff's nerves, said that his stab wounds caused nerve damage and suggested that the plaintiff work out to help nerve pain. Id. at ¶98. The plaintiff says that he suffered severe pain for several days and that Krainyk's "unqualified opinion" made his pain worse and may have contributed to permanent nerve damage. Id.

The plaintiff alleges that on April 2, 2023, defendant Gripentrog was on the RHU when he yelled loudly that the plaintiff was the reason Waupun was on lockdown. Id. at ¶102. Based on these comments, at least two other incarcerated individuals allegedly threatened the plaintiff. Id. at ¶103.

8

The plaintiff alleges that on April 5, 2023, Andrea conducted a "wellness round" when he told her he wanted to see her about his lingering rib injury from the stabbing, but Andrea did not see him. Id. at ¶105.

On May 9, 2023, the plaintiff allegedly wrote to Hepp about how he didn't feel safe at Waupun based on the defendants' failure to investigate the stabbing. Id. at ¶108. The plaintiff says that on May 8, Attorney Jeffrey Scott Olsen wrote Hepp a letter describing how the defendants had failed to take reasonable measures to protect the plaintiff from the stabbing and how inadequate medical care was provided afterward. Id. Attorney Olsen also said that he was denied access to talk to the plaintiff. Id. The plaintiff alleges that on June 4, 2023, Hepp, Pusich and Rymarkiewicz used the excuse that there was a staff shortage to not let him talk to Attorney Olsen on the phone about unconstitutional conditions of confinement and to press criminal charges against CM. Id. at ¶116.

On June 1, 2023, Pusich allegedly told the plaintiff that he was being considered for transfer to another prison. Id. at ¶115. The plaintiff alleges that in July 2023 he was transferred out of Waupun. Id. at ¶117.

The plaintiff claims that the defendants violated his rights under the United States Constitution and Wisconsin state law. Id. at ¶¶120-151. For relief, he seeks compensatory and punitive damages. Id. at ¶152-155.

C.    Analysis

1.    *Failure to Protect from Stabbing Before Incident*

The Eighth Amendment requires prison officials to protect incarcerated persons from violence at the hands of other incarcerated persons. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Prison officials who do not protect one incarcerated individual from another may be found liable under the Eighth

Amendment only if two requirements are met: first, the incarcerated individual must have been exposed to a risk of objectively serious harm, and second, the prison official must have had actual knowledge of that risk and responded with deliberate indifference. See LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020); see also Farmer, 511 U.S. at 837-38.

The plaintiff may proceed on an Eighth Amendment claim against Burns based on his allegations that he notified Burns about the threats he received from CM as well as the tall and short suspects, but that Burns did not do anything. The plaintiff also may proceed against Hepp, Popson and Pusich, who allegedly knew about the threats but did not take action. He may proceed against Kollman and Fialkowski for allegedly not protecting him from the threats after he told them about the threats.

The plaintiff may not proceed against Jane Doe based on allegations that she opened his cell door on February 3, 2023. Although the plaintiff alleges that Jane Doe radioed to have the cell door opened when requested, he also alleges that her action of not leaving the cell entry thwarted a stabbing attempt from the tall suspect that day. He has not stated a claim against Jane Doe.

2. *Failure to Protect, Excessive Force, Failure to Intervene During Incident*

The plaintiff claims that Koontz, Lehman, Schumann, Bailey, Feuerhammer and Greil's failure to open the cell door and/or enter the cell to help him allowed CM to attack him for fifteen to twenty minutes longer than necessary. The plaintiff may proceed on an Eighth Amendment claim against these defendants based on these allegations.

The plaintiff also claims that Bailey's use of pepper spray amounted to excessive force in violation of the Eighth Amendment, and that Greil's use of Taser amounted to excessive force. The plaintiff says that Bailey sprayed him in

10

the face and that Greil tasered him while they were trying to stop CM from attacking him. He also claims that Lehman, Schumann and Feuerhammer failed to intervene to prevent the excessive force. The Eighth Amendment protects incarcerated individuals from physical force that amounts to the "unnecessary and wanton infliction of pain." Whitaker v. Dempsey, 144 F.4th 908, 922 (7th Cir. 2025) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). A prison official's use of force is unnecessary and wanton if he intends "maliciously and sadistically" to cause harm to an incarcerated person. Id. (quoting Forrest v. Prine, 620 F.3d 739, 744 (7th Cir. 2010)); see also Hudson v. McMillian, 503 U.S. 1, 7 (1992). On the other hand, force used in "a good-faith effort to maintain or restore discipline" does not violate the Eighth Amendment. Id. (quoting Forrest, 620 F.3d at 744).

The plaintiff has not stated an excessive force claim against Bailey and Greil based on their alleged use of pepper spray and a taser in an effort to break up the altercation in which CM was stabbing the plaintiff. The defendants had a duty to break up the fight and prison officials may use force "if part of a good-faith effort to restore discipline[]" even if, in retrospect, it appears to have been an overreaction. Mitchell v. Krueger, 594 F. App'x 874, 876 (7th Cir. 2014) (citing Whitley, 475 U.S. at 319). Bailey's and Greil's alleged efforts to use force to stop the altercation in which CM allegedly was stabbing the plaintiff with shanks while the two were locked in a cell was not sadistic; it was sensible. That the force used to break up the fight allegedly harmed the plaintiff is unfortunate, but it does not violate his constitutional rights. He has not stated a claim against Bailey and Greil for using force, or against Lehman, Schumann and Feuerhammer for failing to intervene in the use of force.

11

3. *Medical Care*

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that either has been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an incarcerated individual's pain. McGowan, 612 F.3d at 640 (citing Estelle, 429 U.S. at 104-05.

The plaintiff may proceed on an Eighth Amendment claim against the defendants whom he alleges failed to adequately treat his wounds in the days following the February 5 incident. Those defendants are Vick and Haseleu (February 5 allegations), Greil (February 5 allegations), Edwards (February 6 allegations), Krainyk (February 7 allegations) and Hiland (February 9 allegations). The plaintiff alleges that these defendants failed to provide him with adequate medical care and/or ignored his requests for treatment for his

12

injuries from the February 5 attack by CM. He may proceed against these defendants in their individual capacities.

4. *Remaining Federal Claims: Retaliation; Deliberate Indifference to Exposure to Serious Risk of Harm from Incarcerated Individual; Pattern of Cell Placement Exposing Plaintiff to Serious Risk of Harm in Cell Halls*

In addition to the plaintiff's allegations regarding prison officials' failure to protect him before and during the stabbing incident and the medical care he received in the days following the incident, the plaintiff claims that some defendants retaliated against him after he complained about their refusal to treat his stab wounds. Dkt. No. 1 at ¶¶133-135. He also claims that in the months following the incident until he was transferred from Waupun, he was exposed to a serious risk of harm from other incarcerated individuals and had to refuse to leave the RHU for months. Id. at ¶¶136-145. The plaintiff may not pursue these claims in this lawsuit because they do not sufficiently relate to his underlying claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). He is free to bring these claims in a separate lawsuit or lawsuits.

5. *State Law Claims*

The plaintiff claims that the defendants' actions amounted to negligence in violation of Wisconsin state law. Dkt. No. 1 at ¶¶146-151. The alleged conduct for which the plaintiff states Eighth Amendment failure-to-protect and medical care claims may also amount to negligence claims. The court will exercise supplemental jurisdiction over the plaintiff's state-law negligence claims. See 28 U.S.C. §1367(a).

6. *Summary*

The plaintiff may proceed on the following claims in this lawsuit: (1) Eighth Amendment failure-to-protect and Wisconsin state-law negligence

13

claims against defendants Burns, Hepp, Popson, Pusich, Kollman and Fialkowski for allegedly failing to protect him from the attack by CM; (2) Eighth Amendment failure-to-protect and Wisconsin state-law negligence claims against defendants Koontz, Lehman, Schumann, Bailey, Feuerhammer and Greil for allegedly not opening the cell door sooner and allowing CM to continue to attack the plaintiff; and (3) Eighth Amendment denial-of-medical-care and Wisconsin state-law negligence claims against defendants Vick, Haseleu, Greil, Edwards, Krainyk and Hiland for allegedly providing inadequate treatment or refusing to treat the plaintiff's injuries in the days following CM's attack. The court will dismiss the remaining defendants.

## III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Captain Rymarkiewicz, Lieutenant Gripentrog, CO Jane Doe, Sergeant Demmers, CO Russell, Nurse Andrea and Nurse Hosfelt.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Matthew Burns, Randall Hepp, Emily Popson, Yana Pusich, CO Kollman, CO Fialkowski, Sergeant Koontz, CO Lehman, CO Schumann, Sergeant Bailey, CO Feuerhammer, Captain Greil, Nurse Vick, Health Services Manager Haseleu, Susan Edwards, Nurse Krainyk and Nurse Hiland. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$233.28** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Wisconsin Secure Program Facility, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 4th day of February, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

16